The Court was made aware of a motion to use a demonstrative exhibit in the courtroom, that being the bicycle that is the subject of this litigation, and Mr. Collins, considering that motion, the Court has voted to deny it, so we're going to proceed with the paper record. I think we're satisfied that we can decide this appeal based on the record of recent arguments. So with that, Mr. Collins, you may proceed. Thank you, Your Honor. May it please the Court. Good morning. I brought the bike here today just because it is Exhibit 1, Plaintiff's Exhibit 1 in the record, and the most important piece of evidence in the case in many respects. The trial judge did not touch the bike, the jury was prohibited from touching the bike or even inspecting the bike, and the trial judge excluded the bike from the jury deliberation room. A bike is a common object that we are all familiar with. But the bike was actually admitted into evidence. Correct. But the jury couldn't take it back to the jury. Correct. It was in the well. They were removed from it. They weren't able to touch it. They weren't able to inspect it up closely. All that was allowed was that they were able to see it from the jury box. They were not allowed to take it back in the jury room. What about the expert diagrams that were done? Could the jury have those? The expert diagrams? I don't know. It's an expert diagram. I'm looking it up. At JA-256, how the handlebars worked. It looks like this. Yes, Your Honor. They did get that back there. Yes, Your Honor. They did. They got all the other evidence. In my research, Your Honor, on this issue, I was unable to find any sort of case law that says that a jury should not take evidence back into the jury room. It's always been my experience in 33 years of trial practice that the jury gets all of the evidence. It goes back into the jury room with them. They get to inspect it. They certainly would be able to follow a judge's instructions not to change it in any way. They were not given that opportunity. I guess that was part of the problem here, is that there was a contention that the bike indeed had been changed. The condition of the bike had changed. I will certainly be addressing that issue. I know you will. That may have been part of the judge's concern, so why don't we talk about that? That was not the judge's concern initially. I don't know what the judge's concern was initially because, in fact, that decision was made long before there was any issue of allegations of spoliation of evidence. Let me ask you this. Are you suggesting that the judge was required to allow the bike to go back into the jury room? In my research, Your Honor, I could not find any cases where a judge was allowed or where the Court of Appeals sustained a judge doing that. I tried to find such an example. Perhaps there is some, and I missed it, but it certainly does not comport with my experience as a trial lawyer and the jury looking at the evidence. I did give some examples of things that were supposed to be allowed the jury was supposed to do with evidence. To me, Your Honor, it goes back to the question of we have more than our sight and our hearing. We have our sense of touch, a very important sense. We have other senses as well, but the sense of touch in this case was going to be very important and the jury should be allowed to use the sense of touch. Hold on. I'm not sure I understand that. So, I mean, this was a bike. Correct. What does that mean? Touching and squeezing the brake would have established without doubt that that brake was defective. Now, later we get into this spoliation issue. Did it change and was there some change to it? I'll deal with that. Well, did it change? No. Absolutely did not change. The back brake did not change. And there's no evidence to establish that the back brake ever changed. There was evidence that after the bike was inspected on videotape by our expert, Mr. McElinale, and by the defendant's two experts on two different occasions, the front wheel was realigned with the handlebars. Exactly how that happened, I don't know. You mean your expert's examination of the bike was videotaped? Yes, Your Honor. And it's in the record. And it's about 10 or 15 minutes. I recommend it to your viewing. It doesn't take very long and it kind of explains exactly the status of the bike. Before I took this case, I said, I need to know that there's going to be an expert saying that there's a defect in this brake. I felt that there was a defect. So I'm sorry I interrupted you, but you were saying that, I just wanted to understand what you were saying, that your expert looked at it and then two other experts from the other side looked at it, and what, it changed? It was all, we're talking about the front wheel being aligned with the handlebars. That's all we're talking about for that. So it had changed? So it had changed? No, the back brake never changed. That wasn't my question a while ago when you said nothing, I said, had the bike changed? And you said no. Well, I may have misunderstood. The back brake had never, okay. So there was some change in the bicycle, right? After three inspections on video. Right. Okay. So there wasn't change. And the importance of that, well, the importance of that, Your Honor, is that. Which is probably why the judge, going back to what Judge Diaz had raised earlier about the jury not being able to mess around with the bike, it had changed. The front wheel had been realigned after three inspections and on video, which goes to the spoliation question, and that is, how can there be spoliation of evidence if it's been allowed to be inspected and videotaped three times? Spoliation would. The district court said the reason was because on the facts of this case, after the videotape, but before trial, the plaintiff showed up with the bike and said, this is the same bike. It hasn't been changed. And that's where the duty comes from. That if you're going to bring the bike to trial and say it's in the exact same condition, then you violated the duty if, in fact, you changed it. Your Honor. The change doesn't have to be on videotape. No, no, no. I would imagine that would not be videotaped. Of course not, Your Honor. There's three elements before an instruction on spoliation should be given under Fourth Circuit precedent. That there first be an obligation to preserve. The second is that the object was destroyed or changed with a culpable state of mind, and that the evidence was relevant to a claim or defense. This Court has repeatedly indicated that a spoliation instruction is an extreme sanction. It's very serious. And I take it very serious personally. And the, in this situation, you cannot possibly infer a culpable state of mind after it has been inspected three times. Well, yes, you can, because that would probably be true if culpable meant bad faith intent to fool somebody at trial, but that's not what it means. It just means a purposeful action, whether or not it's sort of bad faith and nefarious. Your Honor, I believe that for spoliation, there must be more. You think there has to be bad faith? I think that there absolutely should be. That's the message consistent with our case law. So do you want us to overrule prior panel discussions? I don't think that that's what your prior precedent says. My reading of spoliation requires a culpable state of mind. There was no culpable. Right, which is identified as a purposeful action. In the district court, apparently, this is actually a question I have for you, so, apparently the defendant's expert testified there's no way to have sort of realigned this without a purposeful action. It's not the kind of thing that could have happened if the bike just sort of fell on the floor, or you're casually handling it, and that testimony wasn't rebutted, and so the district court said, there's my purposeful action. Is there some problem with the finding of purposeful action? I think it, what the expert said is that all you have to do is put the bike between your two wheels and turn it slightly. I cannot tell you how it happened or when it happened. I do not know. Right. But. Attellies had asked for an evidentiary hearing on this, so why not have one below? Why did? I don't know why the judge didn't do it. I was, did you all join in the request for a hearing on that? Your Honor, it was their burden to prove culpable state of mind. So, no, you didn't. Actually, there was some discussion about it. There was actually, the judge offered to do it, and counsel for the defendant rejected the need for the witnesses to come and testify about it. That was part of the record where they said, no, we do not need Ms. Callahan to come in and testify about that. But I believe that under the circumstances where you have the bike, and it is right there in front of the jury, and they have the videotape, they have the photographs that show that it was slightly askew at one point, and it was not slightly askew later, that did not require exfoliation instruction because there was no intent to deceive, and there is no, there is absolutely no way you can infer in, under exfoliation instruction, the idea is that the jury is allowed to infer that the, the evidence would have been more favorable to the defendant had that change not occurred. That's not true here. There is no such inference that can be made related to this turn. Now, make it very clear, too. The brake, and that's what I think I responded to, Your Honor, earlier when you were questioning. The brake has never changed at all, and the change to the front wheel has nothing to do with the brake. It doesn't affect it. Everybody agreed. What, what was the problem in this case, Your Honor, also, in addition to the exfoliation instruction, is that after two days of testimony, and on the third day of trial, counsel changes its defense completely. Up until that point, their defense was always, no, we don't have any problem with that brake. Well, I feel the brake, and I know it's defective. It's always been defective. Our experts showed that it was defective even before we took the case. We videotaped the entire inspection, and he says, at that inspection, it's defective. But they come in and say it's not defective. So to them, that's an okay brake. That's what the case was about. On the third day of trial, the last day of testimony, the fourth day was just closing arguments and instructions. On the third day of trial, they raised this for the first time. They put no evidence on whatsoever that the back brake had changed, yet they accuse us of having altered the back brake. I conceded that, yeah, the pictures show the front wheel is a little bit askew, but the back brake absolutely has never changed. There's been no change of components. There's been no change of settings. There's been no change of anything related to the back brake, and they never proved it. The only thing they did was to say, well, our expert touched it during his inspection. He thought it was okay, and during trial, he touched it again, and it's not. So therefore, it must have changed. He did no measurements, no nothing, to test whether or not it had changed. What was the specific argument that you're referring, where they allege that you changed both the handlebars and the brake? It's in the closing argument, Your Honor, and I circled the page. It is at page 642 of the joint appendix, where they conflated the court's instruction regarding the front wheel on the exfoliation, and they said, how can you believe any of this? This has changed. Just take the judge's instruction and apply it to the back brake. There's no evidence that that brake has ever been changed whatsoever. I know it hasn't, and there is no evidence that it has changed. I'm sorry, just so I understand, so this is an issue with the closing argument? You think that the closing counsel's instruction? I objected, and the judge overruled it, yes. Okay, and is that on appeal? Pardon me, Your Honor, the whole issue about whether they can use the exfoliation instruction to the back brake, yes, is on appeal. Where is it on appeal? So one of the things you have appealed is the denial of your objection in response to the closing argument? Your Honor, I have seven issues on appeal. One of them is exfoliation instruction, and we objected to the exfoliation instruction. Multiple times. No, no, I get that, but I'm just, maybe, is one of your issues on appeal that they misused the exfoliation instruction and argued to the jury that they should apply it to the brake and that you objected properly at the time and the district court improperly overruled that objection? I believe that I've argued in the brief sufficiently that the whole point of what they were saying is that the exfoliation instruction, and I see that my time is up, can I address this in rebuttal? Finish the answer, please. Okay. That the, that they were using the exfoliation argument and the alteration of the bike argument throughout, and that that should not have been allowed. That's an argument regarding the pretrial order, and it's regarding the pre, the, the, the, um. Well, I guess the problem is that the exfoliation instruction only talked about the handlebar, so I know you're unhappy about that, and I accept that, but back to Judge Harris's question, you are now asserting that they made an entirely different argument based on that instruction. The question is, have you preserved it? Did you preserve it at trial? Have you argued it here? I believe I have, Your Honor. All right. Thank you. Mr. Judge. Thank you, Your Honor. I guess I should start with that first question that Judge Harris had. Did you sort of get a little bit aggressive with respect to the exfoliation instruction and argue beyond the record as to the limits of what that instruction allowed? Thank you, Your Honor. May it please the Court. I would say no, I did not. I, what I recall the closing. You were the lawyer below? I was. Okay. I guess you would know. I would know. What I stated was that the plaintiffs had made a promise that the bike was in the same condition and that the exfoliation instruction demonstrates that that promise was broken, and the promise was to bring the bike in the same condition. I don't recall saying that the trial court told you that the brake had changed. Or that you said that. I said that the brake had changed, absolutely. Our expert testified to that. Okay. That was the one disputed change on the bicycle. There were two undisputed changes to the bicycle, one to the barrel in the handlebar apparatus and especially to the front wheel, with the front wheel being the subject of the exfoliation instruction. There was a third disputed change, which was their expert saying this is extremely difficult to pull and it always has been, and our expert saying, and showing his video, saying this was actually very easy to pull back during my inspection. But that wasn't based on the bike as it was brought into the courtroom. That was based on your expert inspection of the bike? Right, Your Honor. That was based on the expert saying I went up and felt the bike that they brought to court today and it feels a lot different with the brake than the one that I inspected a couple years ago. So we have three changes to the bike, two of which are conceded, one of which ended up in exfoliation instruction, and then a contested issue of whether the brake, which was the component that the plaintiffs were focusing on, had been altered also. Your Honors, this is a case in which the plaintiffs, despite submitting only an assertion of manufacturing defect to the jury, showed up to trial with their primary evidence concededly altered in multiple respects, including, although this was disputed, as I just said, the component at issue in the case. This resulting inability to demonstrate the original as-sold condition of the bicycle at the time of sale made it virtually impossible for them to meet their burden of proof, and the jury did not get past the first question on the verdict form. It is that fundamental failure of proof, not discretionary rulings by the trial court, that is the best explanation for the defense verdict in this case. Can I ask you a question about the hearsay issue in this case? This is something I've had trouble with. The certificates of general conformity? Sure. As I understand it, the issue is even if the certificates of general conformity are business records, as to Pacific Cycle kept in the normal course of Pacific Cycle's business, there's this problem with the fact that they incorporate information from SGS's testing. Yes, ma'am. That might be a second layer of hearsay. Does Pacific Cycle do anything to verify the accuracy of that testing? And if not, how can it come in? It can come in, Your Honor. First of all, I want to say that I think the relevance of the certificates to the verdict is pretty low, given that they didn't actually involve plaintiff's particular bike. That suggests that it was completely irrelevant. It was not completely irrelevant. I would say, however, that it was very cumulative, of the more probative evidence of their assembly procedures and their spot checks of quality and things like that. But I do want to answer that question. I would say, Your Honor, because Pacific Cycle routinely relied upon these documents, and this is an expert testing lab that they relied upon, that the business record process actually does encompass sources that are usually relied upon to create those documents. I looked at our case law, it seems to say that if you're going to incorporate it and sort of treat it as part of the first business record, basically, there has to be some verification procedure in place. You can't just say, like, we do it all the time, but we never check to see if it's right. I guess, Your Honor, I didn't interpret it that way. I interpreted it as that if this is a source that you have a right to rely upon, keep in mind this is a source that the CPSC requires the Pacific Cycle to use and to rely upon. They have to use an outside accredited lab by the government to create this report. So this is, I mean, this document is something that they are required by the government to rely upon, and under the Sachs case, at least, that that means that as long as it's part of the normal process. I'm looking at the Roland case, and those cases, the one that really sticks with me is the one where, you know, the people who sign in at a hotel and put their name and address, and the courts say, look, it may be part of the hotel's business record. They keep this ledger in the normal course of business, but if you're going to rely on the truth of that address, then the hotel has to do something to verify those records. It's not enough that they always do it, that they routinely do it, they've done it forever. Where's the verification procedure? Why can you rely on just something someone wrote down in a letter? So why can you just rely on something that this company, SGS, told you? Because I think it's of an entirely different nature, Your Honor. I think that if we have, you know, people who are coming up in a series of one-off events, and then, you know, they're contributing their underlying additional information to the business record, that's a different area. But when this is from the exact same type of person every time, and these are the people that we rely upon in terms of a government-required process. So maybe what you're saying is that counts as verification. I believe it does. They're well-established, so you think that's enough for verification. I do. They're well-established. I think that when the government says, you have to use this lab. They don't say this one, they say SGS, do they? No, I'm sorry, they have a list of approved government labs that have been specifically certified. Okay. And SGS is on the list? It is, yes, Your Honor. And I'm happy to provide that in supplement if Your Honor would like. That is very strictly regulated. Okay, so that's your argument, and are you no longer making the argument that it wasn't admitted for the truth of the matter, it's the Verbal Act exception? I think there's an aspect to that as well, Your Honor, I do. And I think that when this is a document that is required to be generated by the law, I do think that has independent legal significance in and above and beyond. And I think also, this goes to a couple of other issues, but even like the state of mind of the defendant in a negligence claim, I think that the truth of this is not the only issue for which it is useful at the trial. Well, I agree. So I can imagine that in the abstract it could be used not for the truth of the matter, despite it was not defective, but look, we have these really robust quality control procedures. That's what we're introducing it for. Is that how you're saying you used it? Because that's the question, not how it could be used, but how it was used. Did you use it for the truth of the matter, or did you use it only to show the existence of quality control procedures? Your Honor, I would be a little hesitant to say that I absolutely drew a line between the two. Okay, then why are you using it? But I mean, the problem was the objection to them was the hearsay objection, and we dealt with that on a hearsay basis, and I don't recall that particular objection. I'm sorry. The issue was the can you rely upon this other party basis. I don't recall the state of mind. I'm saying if you're raising the verbal, maybe I'm wrong, but I thought that if you're raising the verbal act independent significance of the verbal act exception, that requires that it not be used for the truth of the matter. That is correct, Your Honor, yes. Okay. It must be part of your position that you didn't use it for the truth of the matter, because otherwise you wouldn't be relying on that. I think, Your Honor, that's correct, yes. I don't want to tell you what your argument is, but I don't understand why. I think one of our arguments was that this shows that there are robust procedures in place, and that shows that you can trust them when they say that they check every bike when it comes off the assembly line. Let me ask you about the spoliation instruction. So I think when most people talk about and consider spoliation, it's in the context of someone has been deprived of evidence and being able to analyze evidence, or in this case test the evidence, and so it's entirely appropriate that the person who caused that to happen suffer the consequences of an adverse instruction. But as I understand it, there's no dispute in this case that your expert was able to test and examine the bike pretrial, there was a report filed and all of that. I guess one can question whether the bike should have been brought into the courtroom at all. But that doesn't strike me as the kind of thing what happened. It's the kind of thing that is typically the reason for spoliation instruction. Is that, in your experience, have you seen that in a context like this? I have not, Your Honor, actually. It's very unusual because I think it's because the duty to preserve evidence that has been marked and relied upon in the case is so obvious that it's one of those issues that doesn't come up very much. Most people don't show up to court and all of a sudden you have a different case. It's Exhibit 1A instead of Exhibit 1. Generally, the issue is it's gone, it's been destroyed, it's a fire scene, it can't last forever. It's that sort of thing. But the core principle that you have to maintain the integrity of evidence in your custody during litigation, I think, is the rule. And the problem is that when you don't do that, it's one thing for an expert to take a few photographs. So what is the problem? How did it impact your case or your defense? Your expert had already inspected the bike before it was altered and the judge didn't permit the jury to touch the altered bike. So they weren't impacted by that either. Well, the problem, Your Honor, is that what we weren't able to show, what they were able to see on the bicycle was the handlebars tilted in a way that was consistent with this spillover theory of the plaintiff's. What they weren't able to see was it in its actual post-accident condition when it was tilted in a way that supported the defense theory. And showing someone a few photographs that a juror can quibble with and say, well, you know, I don't know the angle, it's very different. So the plaintiff's had possession of the bike, is that right? Correct. Was it your intent to admit the bike into evidence? Can you say? I don't know. I guess the question I'm asking is what would have stopped the plaintiff from simply destroying the bike? Was that something that they could have done or not? I think that they would have done that at great personal peril. Okay. But they didn't have to bring the bike into the courtroom. Do you agree with that? I guess if they wouldn't have shown up with it, we could have subpoenaed it. Right. But you didn't intend to bring it into the courtroom or have you thought about it? I just assumed it would be there because in a manufacturing defect case, there's really only one primary piece of evidence. Okay. It's the actual product. You can't go out and get another one off the shelf and say, what about this one? So if they had brought it, would you have wanted to bring it? Wow. I think so, yes. I think it's important, and your honors have referred to this issue a few times, that these are virtually all discretionary rulings of the trial court. And so the issue isn't whether any one of you would have made exactly the same ruling because over the course of a trial, no two judges will issue exactly the same set of rulings. The question is whether it was arbitrary and irrational for the district court to resolve these issues in the way that it did. And respectfully, that is not the case. The district court spent exhaustive detail going through all of these issues each time they were raised, very measured, very careful, and really rendered reasonable and reasoned decisions on them. I want to also group the issues on appeal into two categories because I think this is important. The only thing that the jury reached in this case was that there was no defect. The jury did not reach the issue of causation. Many of the issues that are being raised on this appeal are about causation, such as the demonstrative exhibit, the scope of the defense expert's testimony on the accident, the accident reconstruction issue. These are all issues that go to whether the wheel was changed or not or what happened during the crash. The jury did not find anything on causation. They found something on defect. And of those things, the only two issues that I believe are relevant would be the brake testing issue and the certificates, which we've already talked about. I would like to talk about the brake testing issue because I think that while it is possible that the trial court may have had the discretion to allow testing over our vehement objection, the trial court also had the discretion to not allow it. And the trial court talked at length about why it was extremely uncomfortable with the testing. It was concerned that performing a two-finger test, because it had a couple of different steps to it, was outside what reasonable jurors would do. It was also concerned that the bicycle had to have an adequate foundation laid in order to say that it was the same. And at the beginning of the trial, the court said, I'm going to wait and see how the evidence turns out on this because the defendants are challenging this, and I want to see how it goes. And then the spoliation issue started popping up, and at that point, there was going to be no touching or experimentation with the bike. The other issue here, though, is that juror testing creates real problems because then jurors are creating new evidence in their minds that the parties are not necessarily privy to, that cannot be cross-examined, and that is a hornet's nest of trouble. And even in the Freeman case, which was cited by the other side, they talk about cases and they cite cases where, in fact, juror experimentation occurred, and a verdict was thrown out because of that. It's a very volatile situation that is absolutely within the district court's discretion to decide, and given all of the issues that were going on with the bike, the district court was not comfortable with it. A related point there, Your Honors, is to keep in mind that at the trial, it was not disputed anymore that the brake was difficult to operate. The issue was whether it was difficult to operate at the time of this accident, which according to Mr. Logan, the defense expert, when he inspected it afterward, it was fine. So to have the jury go up and squeeze the brake and have everyone agree, as everyone did agree, now it's tough to pull would not have necessarily added anything in terms of the record or the evidence at trial. On the causation issues. Did you say that Mr. Collins agreed at trial that the brake was hard to pull? I think he's fighting that even today. That the brake was difficult to pull? Yeah. I think both sides at trial said this is difficult to operate. I thought he said something entirely different today. That was not my understanding. I mean, I think the plain disclaim from the beginning has been this brake is – Oh, I'm sorry. Yeah, I misunderstood. Go ahead. Yeah. Are you speaking of my expert? Yeah, no, no. Go ahead. Okay. But, no, I mean, the parties, including – I mean, Mr. Logan's testimony at trial was – I even remember the exchange. I don't have the page, but it was, is this brake, you know, difficult to operate? Yes, it is. Right. Was that the case back when you inspected it? No, it was not. With respect to the expert demonstrative, I do not believe that went back to the jury. I would never expect a demonstrative to go back to the jury. That's not what they're for. That's not what they're intended to do. Are you talking about the diagram? Yes. Okay. Yes. So I do not believe that went back, and I do believe it was well within the ability of an expert to illustrate a physical principle. And, again, these are causation issues. So I don't think they ultimately played a role in the verdict. The plaintiffs also expressed – I guess let's talk about the spoliation instruction, because that's the one that seems to be a particular issue here. I do believe, for the reasons we've discussed before, that there is a duty to preserve. I also completely agree with Your Honor that the culpable state of mind is merely the issue of being intentional in terms of the action required. And the evidence was relevant to the claims and defenses of our expert in terms of how the accident occurred. The complaints that I see are that opposing counsel does not like the culpable standard state of mind and wishes that it required bad faith, but the fact is it does not. And although there was no evidentiary hearing, as Your Honor asked, we didn't need an evidentiary hearing because all of the evidence was that this had to have been intentionally done. And the plaintiffs were told they could call their clients back to say that this was an innocent thing, that they deny it, that there was some other issue at fault, and they declined to do that. So the district court, of course, rules upon the record that the parties give to it, and the district court record on this issue was very clear. Can I go just back to whether the obligation to preserve evidence extends after it's already been inspected by opposing counsel? In order to sort of come out your way on this, do we have to hold that, yes, general obligation, you always must preserve evidence in your possession even after it's been shared with the other party? Or is it enough that, you know, on the facts of this case, as the district court held, that if you're going to come to court with the evidence, say the evidence has not been changed, that at least is sufficient to trigger an obligation not to have changed it? I think, Your Honor, the latter would be perfectly sufficient to address the case, and I think it also appropriately recognizes that the district court had the best ability to look at the witnesses, the evidence, as it was being presented to the jury in court and became extremely uncomfortable with the situation as a result. One issue I just want to stress on the spoliation inference is that over our objection, the district court actually gave a less strenuous version of that instruction than we had requested. We had requested a shall presume instruction, which is within the realm of options, and the district court specifically said, no, I'm going to tone that down a little bit. I'm only going to give a permissive instruction, which in the post-trial order, it made a point of saying actually may have helped plaintiffs out in the sense that you could have jurors who were willing to say, you know, one thing's wrong with these people. I'm not going to believe anything. In fact, they were told this relates to this issue. You should consider this with all the other evidence. The idea that while no one is going to get up here and suggest that getting a spoliation inference is a positive development, it was nowhere near as bad as it could have been, and the idea that it was uniformly a bad result and could have had no other consequences whatsoever is not a reasonable inference. I guess the last issue that hasn't been really addressed is the offer of judgment issue. Is there any interest in argument on that? No. Okay. So then to wrap up, Your Honors, basically at trial the jury heard testimony about the detailed quality control at Pacific Cycle as embodied by the certificates that Toys R Us checked the back brake multiple times before they shipped bicycles out, that Pacific Cycle assembles and puts them back in the box before they actually ship them out, and they also heard Mr. Logan's testimony that the back brake worked appropriately at his inspection and therefore would have been appropriate at the time of sale and the accident also. So even if all of the assignments of error were sustained, they would remain harmless in light of this powerful evidence that supported the jury's verdict on the issue that the jury actually decided. So we would ask that this court affirm the trial court's rulings and the verdict of the jury at the trial. Thank you. Your Honor, with regard to your earlier question about whether I preserved it, I believe that at page 26 of our brief I referred to that part of the argument, page 642 of the closing argument where this argument was made by defense counsel linking the spoliation instruction to the back brake. With regard to one issue we did not touch yet was accident reconstruction issue, about whether this expert, Mr. Logan, could testify as an accident reconstructionist. And, in fact, he was not qualified. The judge let him testify from two pieces of evidence. One was that the wheels were askew and, two, that the tooth was in the handlebars. That is just simply not sufficient basis or foundation for an expert to give an opinion regarding whether or not the plaintiff was telling the truth about how the accident occurred. We allege that she put the front brake on and she flipped forward. And he says, no, it was a side fall. And I know that because the wheel was askew and the tooth was in the handlebar. He admitted at various places throughout his testimony, Mr. Logan did, that neither one of those two elements, which he based his opinion on, was sufficient to reach any such conclusion. So we believe that the judge erred by allowing Mr. Logan to testify as to accident reconstruction and thereby calling to doubt all of the plaintiff's testimony. What we really have here, Your Honor, is a huge surprise. And that's what a pretrial order is designed to avoid. We are not here doing trial by ambush. And that's what ended up happening. On the third day of trial, we were ambushed. And their contention all along was that the brake was fine. Mr. Logan said when he inspected it, it was fine, and it was fine now. And then he changes his position at trial because it clearly is not fine. Because the bike showed up changed. Pardon me? The bike showed up altered at trial. It did not. The brake did not show up altered. I didn't say brake. I said bike. I understand, Your Honor. The bike showed up altered. But we're talking about the brake in terms of whether. So they might argue that they were ambushed at trial. No, Your Honor. They cannot argue that because that goes to the spoliation instruction. Because the spoliation instruction, the whole point of the elements of a spoliation instruction, is that you must be able to draw an adverse inference. Why do you keep – when I ask about the bike being altered, why do you keep just talking about the brake rather than the fact that the bike was altered, the handlebars? Why do you – why does that? Because everybody agrees that the handlebars had nothing to do with the back brake, and that was the back brake being defective, which was the heart of the case. But the handlebar orientation had everything to do with sort of the recreation of whether the accident could have occurred in the way plaintiff said it occurred and for the reason plaintiff said it occurred. Your Honor, with the spoliation instruction on the handlebars, there has to be sufficient evidence from which an adverse inference can be drawn that we intentionally or even – well, that there was an intent to make the evidence better, that it was going to help our case. That's what the adverse inference is all about. No, it's not. And we have – I just don't understand this. We have case laws specifically overruling district courts who get this wrong. It requires an intentional act. It can't just be like, whoops, I forgot to bring the bike in from the rain, and so it got all rusty and it wasn't rusty before. It has to be an intentional purposeful act, but there does not have to be bad faith. And this comes up all the time when people have sort of standard file retention programs and they intentionally delete a bunch of files but without any bad faith intent to kind of alter the evidence when it comes to trial, and we have been so clear about this distinction. The inference has to be that the evidence would have been in a better state had it not been altered, that the evidence would have been more favorable to the defendant. That inference cannot be drawn when the plaintiff produced it on three occasions, in our own video and their two occasions prior. You cannot draw the inference that the evidence would have been in a better state. That's the point, that the plaintiff altered it somehow, whether negligently or whatever, that the evidence would have been in a better state. The evidence is there's videos of it. So you didn't really need the bike because there are videos of it. You didn't really need the bike because there are videos of it. That, yes. Then why did you bring it? Your Honor, I'm a very visual person. That's why I bring it. So then they want to have the bike the way it was supposed to be, all misaligned, because that way the judge can visually see it and see that their spillover theory is more likely than the popover theory or whatever it is. Your Honor, a spoliation instruction is a severe sanction. As I say, the district court took very clear account of everything we're talking about. He said, the district court said, I get that the prejudice in this case is not as great as it would have been if your expert had not been, the defense expert, had not even been able to inspect the bike. I get that they can use the photographs, but photographs are not the same as the real thing. Therefore, given the limited but existent prejudice here, I'm going to give the permissive instruction, not the mandatory one. And I've got to say, all of that sounds very much sort of like the kind of thing that's within the scope of the court's discretion. Your Honor, I don't believe that the evidence would have been more favorable to the defendant in any way and that there's any kind of inference the jury can draw just because those handbook bars got altered. I suspect that they got altered when somebody was putting an inner out of a car, taking it to be inspected. That's all that happened. Then why did someone put on evidence about that when the district court said? Because we didn't know. Did anyone want to rebut this evidence about the purposeful act that would have been necessary? As I said, I suspect. I didn't have evidence one way or the other how it got changed. I have no idea how that changed. I suspect it because I put it in and out of cars. Now, let me address the duty to preserve. They never sent a subpoena on this. You're absolutely right. We didn't have to bring it to trial. We could have thrown it in the dump after they inspected it. The case law is very clear about that. And no adverse inference could have been drawn from that. We had videos. We had a tape. We had them inspected. The case law is very clear on that. Let me address the certificates of authenticity aspect of it. Your red light is on, so you're going to need to wrap it up. All right. Thank you, Your Honor. Long and short of it, Your Honor, and I just will wrap it up very quickly and just simply say that we were ambushed on the third day of trial. This changed the entire course of the trial and that all we are asking for is a fair opportunity. If there is really spoliation, put on evidence that we changed that break. Put on real evidence because there was no evidence that we changed the break. Thank you, Your Honor. Thank you, Mr. Collins.
judges: Albert Diaz, Stephanie D. Thacker, Pamela A. Harris